IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Web Apps Agency, LLC, and *Marcus Brown, Individually*** § § § | | |
| *Plaintiffs*, § | | |
| § | | |
| v. § | | |
| § | **Civil Action No.** | |
| **HNTB Corporation, Just Touch Holdings, LLC, Just Touch Interactive, LLC, Dr. Carlos Vital, and Vita Boot Tech, LLC,** § § § § | | |
| *Defendants* | | |

**JURY TRIAL DEMANDED**

**PLAINTIFFS' ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiffs, Web Apps Agency, LLC ("Web Apps") and Marcus Brown ("Brown"), individually, collectively (hereinafter "Plaintiffs") file this Plaintiffs' Original Complaint for Copyright Infringement against Defendants HNTB Corporation ("HNTB"), Just Touch Holdings, LLC ("JTH"), Just Touch Interactive, LLC ("JTI"), Dr. Carlos Vital ("Vital"), and Vita Boot Tech, LLC ("Vita Boot") collectively (hereinafter "Defendants") and would show as follows:

### I.     NATURE OF ACTION

1.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq. Claims for unfair competition are joined herein which are substantial and related to the copyright claim.

2.     This is an action brought by Plaintiffs, Marcus Brown, individually and Web Apps Agency, LLC, to recover against Defendants, HNTB Corporation, Just Touch Holdings, LLC, Just Touch Interactive, LLC, Dr. Carlos Vital, and Vita Boot Tech, LLC, for copyright infringement of

the works under Copyright registration number PAu4-157-684 entitled "Argentina GFX and other unpublished works." Exhibit 1 (Certificate of Registration).

## II. JURISDICTION AND VENUE

3. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 et seq.

4. Venue in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §1400(a) as the place where all defendants or their agents reside.

## III. PARTIES

5. Plaintiff, Marcus Brown, is an individual residing in California whose address is 731 S. Broadway, Los Angeles, CA, 90014.

6. Plaintiff, Web Apps Agency, LLC, is a limited liability company duly organized under the laws of the State of California. Its business address is 731 S. Broadway, Los Angeles, Ca, 90014.

7. Web Apps Agency, LLC is owned and controlled by Marcus Brown, the co-plaintiff.

8. Defendant HNTB Corporation is a Texas corporation duly organized under the laws of the State of Texas. It may be served through its registered agent, Cogency Global, Inc. at 1601 Elm St., Suite 4360, Dallas, Texas 75201, or wherever it may be found.

9. Defendant Just Touch Holdings, LLC, is a limited liability company duly organized under the laws of the State of Texas. It may be served through its registered agent, Bradford Moye at 440 Louisiana St., Suite 1200, Houston, Texas 77002.

10. Defendant Just Touch Interactive, LLC, is a limited liability company duly organized under the laws of the State of Texas. It may be served through its registered agent, Bradford Moye at 440 Louisiana St., Suite 1200, Houston, Texas 77002, or wherever it may be found.

11. Defendant Dr. Carlos Vital, is an individual residing in Texas whose address is 3342 Prince George Dr., Friendswood, Texas 77546, or wherever he may be found.

12. Defendant Vita Boot Tech, LLC, is a domestic limited liability company formed under the lar of Texas with its principal place of business at 11920 Astoria Blvd., Ste. 370, Houston, Texas 77089 and may be served through its Registered Agent Carlos J. Vital at 11920 Astoria Blvd., Ste. 370, Houston, Texas 77089 or wherever it may be found.

## IV.   FACTUAL BACKGROUND

13. In 2019 Montrell Lowe ("Lowe") and Bryan Jason St. Luce (St. Luce) contacted Marcus Brown (Brown) and asked that he and his company, Web Apps Agency, LLC, develop a platform that would allow inner city college bound youth to virtually visit colleges in different parts of the country. It was slated to be an Augmented Reality (AR) platform to help inner city students virtually visit college campuses across the United States and to see and hear the school's ambassadors discuss their educational and athletic offerings.

14. During COVID, this platform, although not as well used as planned, provided a unique opportunity for disadvantaged inner city youths to receive the same 'visit experience' as many of their more affluent contemporaries. This virtual program was promoted by Just Touch University, LLC, which was a business that Lowe and St. Luce were running on their own time, after normal business hours. Lowe and St. Luce dedicated their time to this very narrow demographic of African American and Latino students.

15. As more colleges and student athletes became interested in the platform, Brown suggested to Lowe and St. Luce that the platform he developed for them could and should have more commercial uses. He told them they would not make any money using this platform solely for educational purposes and that they should look at other opportunities. Brown also suggested to them that his paying clients around the country were looking at infrastructure, as the new

administration in Washington was prepared to invest in public transportation and other infrastructure projects, and that was an area that they (Lowe and St. Luce) should explore. Around the summer / spring 2021 Just Touch University, LLC started looking at commercial avenues for the Web Apps platform. St. Luce accompanied Brown to African American technology conferences to meet and greet engineering and construction companies that could get them into the AR space.

16. During several trips to technology conventions in Canada, and then in Florida, St. Luce and Brown presented the AR platform in a demonstration booth. The platform drew a significant crowd including a national engineering company, HNTB Corporation ("HNTB"). It was at one of these conferences in Florida—COMTO—after HNTB witnessed the AR platform developed by Web Apps, that HNTB personnel, Steve Granson and Kimberly Slaughter, reached out to St. Luce.

17. HNTB was, in fact, planning to submit a proposal to the City of Houston in late 2020 for Houston's new Metropolitan Transit Authority ("METRO") project. Houston, like other large municipalities during COVID, appeared to be looking at virtual offerings for their customers, at least as to a description of routes, and business around each stop and station, hoping to provide a virtual interactive platform. Houston, building its transportation infrastructure, would also become one of the first cities in the country to have the AR platform. HNTB obviously saw the advantage of being involved in a $7 billion project with the City of Houston for its Metro line.

18. Just Touch University, LLC, along with Web Apps' IP, could work with HNTB to submit the proposal. But while Just Touch University, LLC was idea rich, it desperately needed a financial backer who would remain on the sidelines and allow Lowe and St. Luce to coordinate with Web Apps and secure the Houston Metro Contract. Lowe and St. Luce approached St. Luce's friend and physician, Carlos Vital, MD about allowing him to passively participate in the AR

business they were creating. Vital was very interested in Just Touch University, LLC, and agreed to pay Lowe monies for expenses Just Touch University had incurred to receive a minority stake. Vital received an ownership stake in Just Touch University, LLC. Eventually, Lowe, St. Luce, and Vital decided to form Just Touch Holdings, LLC (JTH), with Just Touch University becoming its wholly owned subsidiary.

19. JTH was formed with ownership percentages that matched Just Touch University, LLC. Lowe held 62% interest, Vita Boot—Dr. Vital's company—held 28% and St. Luce held a 10% ownership interest in JTH, as stated in its Contribution Agreement dated June 8, 2020.

20. JTH then set up a second wholly owned subsidiary, Just Touch Interactive, LLC ("JTI") to take advantage of the Metro project. Specifically, Vital knew that Lowe's Small Business Enterprise ("SBE") designation, if used within the framework of Just Touch Interactive, LLC, could be used to bid on City of Houston projects that were set aside for minority SBEs. This included the METRONext Project Number 72844. Vital promised to be a financial backer for JTH and its subsidiary, JTI, if the company acquired a part of the Metro Project through HNTB.

21. Vital also promised to use his claimed political connection within the local Houston political scene to investigate public transportation projects. With Lowe ostensibly in control of JTH, the business entered formal negotiations with HNTB to work on the Houston Metro project. Web Apps, also recognizing the potential of being involved on the HNTB project, agreed to help JTH at a fraction of its fee to assist in the proposal. Web Apps was contacted and offered ten percent (10%) of JTI if Web Apps (and its founder, Brown) would assist HNTB in its proposal. Web Apps accepted the 10% membership interest to help HNTB craft the proposal.

22. Brown also agreed to function as a W2 employee for a short while so that he could receive payment for his time to work on the HNTB proposal. Shortly after Web Aps started putting together videos and other IP which would be necessary for both the City of Houston METRO

proposal and the execution of project deliverables, JTH requested that Web Apps transfer or assign its intellectual property in anything it created for the HNTB proposal. Web Apps flatly refused licensing with or parting with any of its intellectual property rights. It had never done so in normal circumstances and would not do so on a very speculative project. In an attempt to sidestep Web Apps' absolute refusal to assign the IP, and knowing such an assignment would be an issue if litigation ensued, JTH fabricated an assignment, and placed an electronic italicized signature created by a JTH employee on the document.

23. Prior to this project, neither JTH nor any of its subsidiaries had any experience with public transportation projects, and certainly had no experience with providing an AR platform for Metro. JTH partnered with HNTB, and suggested Steve Granson, Associate Vice President - Project Development Leader at HNTB ("Granson") work with Web Apps on the Houston Metro proposal. Granson worked directly with Brown and Web Apps to write the proposal, and requested Brown to shoot videos and create a QR code that would allow the AR vision to be seen by Houston Metro when it evaluated HNTB's proposal. JTH worked up a proposal for HNTB to submit to Houston Metro to obtain a $7 Billion contract for the expanding Metro Lines in Houston.

24. Web Apps had experience in AR, through its work with Dreamworks in California, as well performing contract work for Pixar. JTH, through its subsidiary, retained the services of Web Aps, which included its founder, Brown, to develop the proposal and communicate with HNTB to finalize the proposal. Brown, through Web Apps, wrote most of the proposal that HNTB would submit to Houston Metro for the METRONext Project Number 72844. On or about November 2021, HNTB successfully obtained the Metro Project, based on the proposal that was written, for the most part by Marcus Brown, but more importantly, contained Web Apps' unassigned intellectual property— videos. The proposal included the copyrighted videos that are a part of this lawsuit, attached as Ex. B hereto.

25. The HNTB proposal included PAu4-157-684 entitled "Argentina GFX and other unpublished works," as part of the proposal. Brown reiterated that Web Apps had not transferred any of the intellectual property rights in his work to JTH (or its subsidiary, JTI) or to HNTB.

26. Shortly after obtaining the Houston Metro contract, Vital, inexplicably claiming a majority interest in JTH, had his lackies fire St. Luce and Lowe from the very company they founded. That matter, to decide the corporate governance and ownership of JTH, is presently being prosecuted in a Harris County District court.1

27. JTH then decided to part ways with Web Apps and Marcus Brown. JTH fired both from their contractor status and forfeited Marcus Brown's 10% ownership interest in JTI, depriving him of his expected interest in the 7-billion-dollar METRO contract.

28. HNTB did not secure the rights to use Web Apps intellectual property submitted in its proposal. JTH represented to HNTB that it had control of the intellectual property. It did not. Even today, after JTH terminated Web Apps, HNTB has failed to secure any intellectual property rights to use Web Apps copyrightable videos. As of this complaint, the Web Apps videos are being shown on YouTube and other social media platforms without obtaining a license from Web Apps to use the videos. HNTB has even taken credit for the intellectual property created by Web Apps.

29. Plaintiffs are, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to "Argentina GFX New Final and 8 Other Unpublished Works."

//

//

//

---

[1] Cause No. 2022-09984; *Bryan Jason St. Luce et al v. Carlos J. Vital, et al*, in the 113th Judicial District Court, Harris County, Texas.

## V. CLAIMS FOR RELIEF

30. The Copyright Act grants the owner of a copyright the exclusive right to authorize the reproduction, distribution, and preparation of derivatives of the owner's work. This can include:

- making copies of the copyrighted work;
- preparing derivative works from the copyrighted work;
- distributing copies of the work by sale or rental, lease, or loan; and
- preventing any intentional modification, mutilation, or distortion of their work.

*See* 17 U.S.C. § 106; see also Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 546–47 (1985).

## COUNT I

### HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Web Apps' Right to Reproduce Under 17 U.S.C. § 106(1)

31. Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein. FED. R. CIV. P. 10(c).

32. Plaintiffs, U.S. citizens, created an original work of art, to wit, video presentations. This material is copyrightable subject matter under the laws of the United States. See 17 U.S.C. § 101 et seq.

33. Plaintiff complied in all respects with the Copyright Act, 17 U.S.C. § 101 et seq, and with all laws governing copyrights. Plaintiff received from the Register of Copyrights a certificate of registration, dated and identified as follows: Registration Number, PAu004157684, effective date of registration, November 29, 2022, described as Argentine GFX New Final and 8 Other Unpublished Works. Since 2020 Plaintiffs have been the sole of all rights, title, and interest in and to the copyright on this work.

34. HTNB, JTH, JTI, Vital and VitaBoot, without permission or legal authority, are making and causing to be made unauthorized copies of copyrighted materials. HTNB, JTH, JTI, Vital and Vita Boot's conduct constitutes infringement of Web App's exclusive right to produce under § 106(1) of the Copyright Act.

35. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' copyrights and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

36. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of Web Apps LLC. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

37. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of Web Apps LLC. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' and exclusive rights conferred thereon, Web Apps is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

38. Web Apps is entitled to its costs, including reasonable attorney's' fees, pursuant to 17 U.S.C. § 505.

//

//

//

## COUNT II

**HTNB, JTI and JTI's Infringement of WebApps' Right to Prepare Derivative Works Under 17 U.S.C. § 106(2)**

39. Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein. FED. R. CIV. P. 10(c).

40. HTNB, JTH, JTI, Vital and VitaBoot, without permission or legal authority, are making and causing to be made unauthorized copies of copyrighted materials. HTNB, JTH, JTI, Vital and Vita Boot's conduct constitutes infringement of Webapp's right to prepare derivative works under § 106(2) of the Copyright Act.

41. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' copyrights and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

42. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of WebApps LLC. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

43. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of Web Apps LLC. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' and exclusive rights conferred thereon, Web Apps is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

44. Web Apps is entitled to its costs, including reasonable attorney's' fees, pursuant to 17 U.S.C. § 505.

## COUNT III

### HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Web Apps' Right to Distribute Under 17 U.S.C. § 106(2)

45. Plaintiffs hereby adopt and re-allege the allegations previously set forth in this Complaint as if fully set forth herein. FED. R. CIV. P. 10(c).

46. HTNB, JTH, JTI, Vital and VitaBoot, without permission or legal authority, are making and causing to be made unauthorized copies of Web Apps copyrighted materials. HTNB, JTH, JTI, Vital and Vita Boot's conduct constitutes infringement of Webapp's right to Distribute under § 106(3) of the Copyright Act.

47. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' copyrights and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

48. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of WebApps LLC.

49. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps' and exclusive rights conferred thereon, Web Apps is entitled to actual damages plus HTNB, JTH, JTI, Vital and Vita Boot's profits from infringement as proven at trial pursuant to 17 U.S.C. § 504(b).

50. HTNB, JTH, JTI, Vital and Vita Boot's Infringement has been willful, wanton, without justification or excuse, and with gross indifference to the rights of Web Apps LLC. As a direct and proximate result of HTNB, JTH, JTI, Vital and Vita Boot's Infringement of Webapps'

and exclusive rights conferred thereon, Web Apps is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

51. Web Apps is entitled to its costs, including reasonable attorney's' fees, pursuant to 17 U.S.C. § 505.

## VI. DAMAGES

52. Plaintiff hereby adopts and re-alleges each and every allegation previously set forth in the preceding paragraphs of this Original Complaint as if fully set forth herein. FED. R. CIV. P. 10(c).

53. Plaintiff seeks actual damages as defined under 17 U.S.C. § 504(b).

54. Plaintiff seeks statutory damages as defined under 17 U.S.C. § 504(c).

55. Defendants continue to cause Webapps irreparable injury for which Webapps has no adequate remedy at law. This injury cannot be fully measured and compensated by monetary damages. Webapps is entitled to a permanent injunction enjoining HTNB, JTH, JTI, Vital and VitaBoot from future infringement of Webapps copyrights pursuant to 17 U.S.C. § 502.

56. Due to Defendant's conduct, Plaintiff was forced to keep the undersigned counsel to pursue these causes of action. Plaintiff seeks to recover their reasonable attorneys' fees and costs, along with pre-judgment and post-judgment interest, under the statutes cited above or as otherwise allowed by law.

## VII. ATTORNEY'S FEES

57. Plaintiff hereby adopts and re-alleges each and every allegation previously set forth in the preceding paragraphs of this Original Complaint as if fully set forth herein. FED. R. CIV. P. 10(c).

58. Plaintiff is entitled to reasonable attorney's fees as defined under 17 U.S.C. § 505.

59. Due to Defendant's conduct, Plaintiff was forced to keep the undersigned counsel to pursue these causes of action. Plaintiff seeks to recover their reasonable attorneys' fees and costs, along with pre-judgment and post-judgment interest, under the statutes cited above or as otherwise allowed by law.

## VIII. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and after trial and hearing, Plaintiffs be granted the relief requested as requested below:

a. declaration that HTNB, JTH, JTI, Vital and Vita Boot's conduct willfully infringes WebApps' copyrights;

b. permanent injunction enjoining HTNB, JTH, JTI, Vital and VitaBoot, their partners, employees, directors, officers, agents, licensees, successors and assigns, and all persons;

c. acting in concert with the foregoing, from infringing on WebApps' rights of reproduction, distribution, or preparation of derivative works under 17 U.S.C. § 106;

d. WebApps' actual damages plus R HTNB, JTH, JTI, Vital and Vita Boot's profits and royalties from infringement as proven at trial pursuant to 17 U.S.C. § 504(b);

e. Web Apps' costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

f. all actual damages arising from Defendants' infringement;

g. pre- and post-judgment interest; and

h. such other and further relief, as law or equity, general or special, to which WebApps may be justly entitled to receive.

//
//
//
//
//
//

Respectfully submitted,

**Vethan Law Firm, PC**

By:     /s/ Charles Vethan

Charles Vethan
Texas Bar No. 00791852
Cameron Weir
Texas Bar No. 24088616
Joseph L. Lanza
Texas Bar No.  00784447
Two Memorial City Plaza
820 Gessner, Suite 1515
Houston, Texas 77024
Telephone: (713) 5262222
Facsimile: (713) 5262230
Email: edocs@vwtexlaw.com

**Attorneys for Plaintiffs**