United States District Court
Southern District of Texas
**ENTERED**
August 25, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WEB APPS AGENCY, LLC, *et al.*, § § Plaintiffs. § § V. § § HNTB CORPORATION, *et al.*, § § Defendants. § | § § § § CIVIL ACTION NO. 4:23-cv-01524 § § § § § |

## **MEMORANDUM AND RECOMMENDATION**

There are two motions for partial summary judgment pending before me in this copyright infringement case. The first was filed by Plaintiffs Web Apps Agency, LLC and its founder, Marcus Brown. *See* Dkt. 46. The second was filed by Defendants Just Touch Holdings, LLC ("JTH"), Just Touch Interactive, LLC ("JTI"), Dr. Carlos Vital, and Vita Boot Tech, LLC (collectively "Just Touch Defendants"). *See* Dkt. 55.

For the reasons discussed below, Plaintiffs' motion for partial summary judgment should be denied and Just Touch Defendants' motion for partial summary judgment should be granted.

### BACKGROUND

In 2018, the Metropolitan Transit Authority of Harris County ("METRO") announced a major expansion project to address the region's growing population and alleviate traffic congestion. HNTB Corporation—an engineering, architectural, planning, and construction management company—decided to submit a proposal to METRO to serve as Program Management Consultant for the new project. To assist with the bid, HNTB turned to JTI, who agreed to prepare certain aspects of HNTB's proposal for submission to METRO. The agreement between HNTB and JTI is set forth in a document titled "Teaming Agreement."

JTI and its parent, JTH, asked Web Apps to design the technical and creative aspects of HNTB's proposal to METRO. As part of that effort, Web Apps created scripts, filmed and edited videos, and produced copyrighted audiovisual works registered as "Argentina GFX and 8 Other Unpublished Works." Although HNTB never entered into a contractual agreement with Web Apps, the Teaming Agreement made clear that a sub-consultant assisting HNTB retained ownership of its intellectual property. Despite this, HNTB and Just Touch Defendants allegedly incorporated Web App's videos into HNTB's June 2020 proposal to METRO and posted the videos on YouTube. METRO awarded HNTB the contract. After the award, Just Touch Defendants sought to have Web Apps retroactively assign its rights in the copyrighted materials, but Web Apps refused. Defendants allegedly continued using and distributing the copyrighted materials.

Plaintiffs instituted this lawsuit on April 25, 2023. Plaintiffs allege that Defendants committed copyright infringement. The discovery period has closed, and the parties' dispositive motions are ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosp. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (quotation omitted). Where the movant does not bear the burden of proof, his burden is satisfied by

showing that the other party has a "failure of proof on an essential element of its claim [or affirmative defense]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329. The parties satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "When parties file cross-motions for summary judgment, [I] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotation omitted). "[I] must consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

A trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs move for partial summary judgment as to 1) their claims for copyright infringement and 2) Defendants' affirmative defenses. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). I will assume,

3

without deciding, that Plaintiffs can establish infringement. Even so, I find there to be a genuine dispute of material fact as to at least one of Defendants' affirmative defenses—implied license.

"[T]he existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement" on which the accused infringer bears the burden of proof." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5 (5th Cir. 2003). The classic circumstance in which an implied license arises is "when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quotation omitted). This is not, however, the only circumstance in which an implied license can arise. An implied license may arise in any "circumstances where the totality of the parties' conduct supported such an outcome." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012). "Consent for an implied license may take the form of permission or lack of objection." *Id.* at 500.

Plaintiffs argue that Defendants have no evidence to suggest an implied license: "Specifically, there is no evidence to show that it was Plaintiffs' intent to allow copying and distribution of the copyrighted works. Defendants tried and failed repeatedly to procure an agreement between themselves and Plaintiffs." Dkt. 46 at 21. Stated differently, Plaintiffs' position is that Defendants' multiple attempts and failures to "procure the rights to Plaintiffs' copyright in the works . . . evinces a mutual understanding that Defendants *did not have* the right to use Plaintiffs' copyrighted works." *Id.* at 17.

In support of this argument, Plaintiffs cite *Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020). That Ninth Circuit opinion, however, does not discuss implied licenses and Plaintiffs offer no explanation for how it applies to the facts of this case. Perhaps Plaintiffs meant to

4

cite *Oracle America, Inc. v. Terix Computer Co.*, No. 5:13-cv-03385, 2015 WL 2090191, at *8 (N.D. Cal. May 5, 2015), for the proposition that "no implied license may permit what the actual licenses prohibit." *Id.* Plaintiffs presumably make this argument because Article 5.2 of the Teaming Agreement states that:

> SUBCONSULTANT shall retain its ownership rights in its design, drawing details, specifications, data bases, computer software, intellectual property and other proprietary property. Any know-how, methodologies, equipment or processes used by Team Member under this Agreement or subsequent Prime Contract, including without limitation, all copyrights, trademarks, patents, trade secrets, and any other proprietary rights inherent therein and appurtenant thereto shall remain the sole and exclusive property of Team Member or its suppliers.

Dkt. 46-11 at 3. Yet, Plaintiffs fail to cite any case law that stands for the proposition that a reservation of rights cannot still give rise to an implied license where, as here, Defendants requested the creation of a work that Plaintiffs delivered *knowing* that it would be distributed. *See* Dkt. 67 at 10–11.

"[A]lthough the contract expressly reserves ownership of Plaintiff's copyright in the designs, this is not dispositive of the licensing issue." *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 338 (N.D.N.Y. 2016); *see also Thomas M. Gilbert Architects, P.C. v. Accent Builders & Devs., LLC*, 377 F. App'x 303, 308 (4th Cir. 2010) ("While an express reservation of ownership in the Plans' copyright is not dispositive of the licensing issue, . . . at a minimum it evinces an intent to grant, at best, a limited license.").

> In short, although courts have held that contractual language can create or negate an implied license, . . . [the Teaming Agreement does not] definitively establish whether or not an implied license arose in this case. Moreover, even if strict application of the contract language would preclude implied licenses to use the [works], it is possible that there was a course of conduct between the parties that did create an implied license. For example, if the contracts all said that there could be no implied licenses, and that permission to use the images did not begin until full payment was made, but the parties' actual practice was always to bill for the licenses a month after publication, there would potentially be a strong argument that the

defendant had an implied license notwithstanding the contract language.

*Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 127 (S.D.N.Y. 2012). Plaintiffs' statement in their own motion for summary judgment that "*any* license to use was conditional upon Plaintiffs' receipt of such due consideration" suggests this may be the case. Dkt. 46 at 12. In other words, Plaintiffs seem to implicitly acknowledge that they were granting Defendants a nonexclusive implied license in exchange for payment, which Plaintiffs never received. But that is a breach of contract claim, not a copyright infringement claim.

Construing the evidence in favor of the nonmovants, as I must, the "better course" is to proceed to trial on Plaintiffs' claims. *Anderson*, 477 U.S. at 255.[1]

## JUST TOUCH DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Just Touch Defendants move for partial summary judgment on Plaintiffs' actual damages and indirect profits claims, arguing that "Plaintiffs have failed to meet their burden of presenting legally sufficient evidence" of either. Dkt. 55 at 31. Through their briefing, the parties have also raised the issue of whether "Plaintiffs have withdrawn their claims for statutory damages and attorneys' fees." *Id.* at 14.

### A. PLAINTIFFS HAVE WITHDRAWN THEIR CLAIMS FOR STATUTORY DAMAGES AND ATTORNEYS' FEES

In response to HNTB's motion to dismiss, Plaintiffs unequivocally stated that they had "decided to forego the pursuit of statutory damages and attorney fees to expedite proceedings and opt for actual damages and lost profits." Dkt. 32 at 13–14. Plaintiffs then explained the practical reason for doing so:

> This decision is in line with established case law, which confirms a copyright holder's right to choose between these remedies. . . . Plaintiffs aim to simplify the legal process, ensuring a just resolution by presenting evidence of their actual damages and any

---

[1] HNTB has filed Objections to and [a] Motion to Strike Plaintiffs' Summary Judgment Evidence. Dkt. 66. I deny these objections as moot because "this evidence does not affect the disposition of [Plaintiffs'] summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-cv-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022).

profits linked to the infringement. This approach aligns with statutory guidelines and legal precedent, demonstrating Plaintiffs' commitment to a fair resolution *without seeking statutory damages or attorney fees.*

*Id.* at 14 (emphasis added). This concession is "absolutely binding" on Plaintiffs. *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir. 1959).

> An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client. Those statements or agreements which dispense with proof of facts are made with respect to the impending trial and until withdrawn are not merely evidence as in the case of an ordinary admission. They are absolutely binding. As long as they stand, they foreclose the matter altogether.

*Id.* It is true that Plaintiffs could have "withdrawn" this statement. *Id.* But they must have done so in a timely fashion. Plaintiffs cannot alter their damages theories after the close of discovery in response to a dispositive motion. Accordingly, Plaintiffs must be held to their word that they are not seeking statutory damages or attorneys' fees.

**B. PLAINTIFFS HAVE NOT PRESENTED EVIDENCE OF DAMAGES[2]**

Just Touch Defendants seek partial summary judgment on Plaintiffs' claims for actual damages and indirect profits. I will address each in turn.

### 1. *Actual Damages*

"In a copyright infringement case, actual damages may be determined by examining the fair market value of a license authorizing the defendant's use." *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) (collecting cases). "Courts have construed the 'actual damages' measure to include license fees that the copyright owner would have obtained for the infringer's use of

---

[2] Just Touch Defendants ask me to strike Plaintiffs' evidence of damages as untimely because it was either not produced or disclosed during discovery. *See* Dkt. 79 at 15. I need not reach this argument because, even considering the summary judgment record, Plaintiffs have not presented competent summary judgment evidence to create a genuine dispute on either of their damages claims. I will address the admissibility of Plaintiffs' damages evidence when I rule on HNTB's pending motion to exclude. *See* Dkt. 96.

the copyrighted material." *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4366990, at *11 (S.D. Tex. Oct. 27, 2010). "Fair market value may be established where: (1) a plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work." *Id.* (quotation omitted). Just Touch Defendants argue that Plaintiffs have presented no evidence of actual damages. I agree.

For starters, Plaintiffs fail to offer a shred of evidence indicating "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material." *MGE UPS Sys v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010). Plaintiffs' mere assertion that they "suffered actual damages" through Defendants' use of the copyrighted material is not evidence of fair market value. Dkt. 68 at 11.

Plaintiffs argue they "are entitled to a fair hourly rate" for the work they performed to prepare the videos HNTB allegedly used in its bid proposal to METRO. *Id.* Fine, but Plaintiffs must still put forth some evidence of what that hourly rate should be. They have not done so. Indeed, Plaintiffs acknowledge that they seek fair hourly rate "which as yet has not been determined." *Id.* This admission is a death knell to Plaintiffs' actual damages claim. To survive summary judgment, it is Plaintiffs' burden to present some evidence creating a genuine dispute of material fact as to damages. The fact that "the MSA Agreement between HNTB and METRO . . . allowed an hourly rate, approved by METRO, with Metro's allotted profit of 12% after markup" sheds no light on the appropriate hourly rate Plaintiffs should receive for the work Web Apps did in connection with HNTB's bid submission. Because Plaintiffs have presented no evidence of actual damages, Just Touch Defendants are entitled to summary judgment on Plaintiffs' actual damages claim.

### *2. Indirect Profits*

A plaintiff asserting a copyright infringement claim may seek "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "The plaintiff has the burden of proving that the defendant's gross revenues are specifically attributable to the sale of the infringing works." *Straus*, 484 F. Supp. 2d at 645 (collecting cases). "Once the plaintiff has presented proof of the infringer's gross revenues attributable to the sale of the infringing works, the defendant is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*

This case, like in *Straus*, "is not a case in which the defendants are alleged to have sold the copyrighted work for a profit. Rather, this is an indirect profits case, in which defendants are alleged to have used a copyrighted [work] to sell other products." *Id.* In such a case, "the profits 'attributable' to the infringement are more difficult to quantify. But that difficulty does not change the burden of proof established by the statute." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). "[T]he plaintiff has the burden to demonstrate a nexus between the infringement and the indirect profits." *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (quotation omitted).

Plaintiffs claim that Just Touch Defendants performed almost $1 million in subcontracting work on the METRO contract awarded to HNTB. Plaintiffs further insist that they are entitled to the profits Just Touch Defendants received for that work. As my esteemed colleague, Senior Judge Lee Rosenthal, observed, "several" courts have "den[ied] recovery of the defendant's profits based on revenues from selling products that were advertised through the unauthorized use of copyrighted materials." *Straus*, 484 F. Supp. 2d at 646 (collecting cases). As in those cases, there is simply no competent evidence here of a causal relationship between Just Touch Defendants' alleged use of the copyrighted materials and the award of the

9

METRO contract to HNTB (not to mention the profits Just Touch Defendants obtained for working on the METRO project).

Plaintiffs maintain that HNTB's use of Web Apps's copyrighted material "pushed HNTB to the lead in the evaluation of of the submittals" for the METRO contract. Dkt. 68 at 18 (quoting Dkt. 70 at 2). The only evidence Plaintiffs can point to for this assertion is the declaration of Achilles Patrick, a gentleman who "was not involved in the selection of HNTB," Dkt. 70 at 2, did not work at METRO when the proposal in question was submitted, and whose statements about HNTB's submission are based entirely on documents that are not in the record. *See* Dkt. 70. Patrick's declaration is not based on personal knowledge, lacks foundation, and consists of conclusions, speculation, and inadmissible hearsay. I will not consider it. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (holding "that the district court was permitted to find [evidence] to be hearsay despite the lack of discussion of hearsay prior to the district court's initial opinion").[3] Because Plaintiffs can point to no admissible evidence suggesting a causal relationship between the infringement and Just Touch Defendants' profits, Just Touch Defendants are entitled to summary judgment on Plaintiffs' indirect profits claim.

## CONCLUSION

For the reasons explained above, the court should deny Plaintiffs' motion for partial summary judgment (Dkt. 46) and grant Just Touch Defendants' motion for partial summary judgment (Dkt. 55).

---

[3] Although the deadline to file dispositive motions in this case expired on November 23, 2024, HNTB, without seeking leave of court, filed a Joinder and Reply in Further Support of [Just Touch Defendants' Motion for Partial] Summary Judgment ("Joinder") on February 21, 2025–the same day that Just Touch Defendants' reply in support of their motion for partial summary judgment was due. Dkt. 76. Also on February 21, 2025, HNTB filed Objections to and [a] Motion to Strike Plaintiffs' Summary Judgment Evidence directed at the evidence Plaintiffs submitted in opposition to Just Touch Defendants' motion for partial summary judgment. Dkt. 78. Because HNTB failed to comply with the dispositive motion deadline, I strike the Joinder and will not consider HNTB's objections to Plaintiffs' evidence on a motion to which HNTB is not involved.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 25th day of August 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE