United States District Court
Southern District of Texas
**ENTERED**
September 02, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WEB APPS AGENCY, LLC, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-01524 |
| | § | |
| HNTB CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

There are two motions for partial summary judgment pending before me in this copyright infringement case. The first was filed by Plaintiffs Web Apps Agency, LLC and its founder, Marcus Brown. *See* Dkt. 46. The second was filed by Defendants Just Touch Holdings, LLC ("JTH"), Just Touch Interactive, LLC ("JTI"), Dr. Carlos Vital, and Vita Boot Tech, LLC (collectively "Just Touch Defendants"). *See* Dkt. 55. Additionally, Defendant HNTB Corporation has filed a Rule 37 motion to exclude evidence and witnesses at trial, as well as a motion to strike Plaintiffs' jury demand. *See* Dkts. 96, 97.

For the reasons discussed below, Plaintiffs' motion for partial summary judgment should be denied and Just Touch Defendants' motion for partial summary judgment should be granted. The court should also *sua sponte* apply its rulings on Just Touch Defendants' motion for partial summary judgment to HNTB; deny HNTB's motion to exclude in part but grant it as to the testimony of Bridget Mickins, a witness who was not disclosed until after discovery ended; and grant HNTB's motion to strike Plaintiffs' jury demand. This case should be set for a bench trial on Plaintiffs' claims for equitable relief against Defendants.

### BACKGROUND

In 2018, the Metropolitan Transit Authority of Harris County ("METRO") announced a major expansion project to address the region's growing population

and alleviate traffic congestion. HNTB—an engineering, architectural, planning, and construction management company—decided to submit a proposal to METRO to serve as Program Management Consultant for the new project. To assist with the bid, HNTB turned to JTI, which agreed to prepare certain aspects of HNTB's proposal for submission to METRO. The agreement between HNTB and JTI is set forth in a document titled "Teaming Agreement."

JTI and its parent, JTH, asked Web Apps to design the technical and creative aspects of HNTB's proposal to METRO. As part of that effort, Web Apps created scripts, filmed and edited videos, and produced copyrighted audiovisual works registered as "Argentina GFX and 8 Other Unpublished Works." Although HNTB never entered into a contractual agreement with Web Apps, the Teaming Agreement made clear that a sub-consultant assisting HNTB retained ownership of its intellectual property. Despite this, HNTB and Just Touch Defendants allegedly incorporated Web Apps's videos into HNTB's June 2020 proposal to METRO and posted the videos on YouTube. METRO awarded HNTB the contract. After the award, Just Touch Defendants sought to have Web Apps retroactively assign its rights in the copyrighted materials, but Web Apps refused. Defendants allegedly continued using and distributing the copyrighted materials.

Plaintiffs instituted this lawsuit on April 25, 2023, alleging that Defendants committed copyright infringement. All four pending motions—the two motions for partial summary judgment, the motion to exclude, and the motion to strike jury demand—are ripe for ruling. I begin with the dispositive motions.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosp. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (quotation omitted). Where the movant does not bear the burden of proof, his burden is satisfied by showing that the other party has a "failure of proof on an essential element of its claim [or affirmative defense]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329. The parties satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "When parties file cross-motions for summary judgment, [I] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotation omitted). "[I] must consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

A trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for partial summary judgment as to 1) their claims for copyright infringement and 2) Defendants' affirmative defenses. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). I will assume, without deciding, that Plaintiffs can establish infringement. Even so, I find there to be a genuine dispute of material fact as to at least one of Defendants' affirmative defenses—implied license.

"[T]he existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement" on which the accused infringer bears the burden of proof. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5 (5th Cir. 2003). The classic circumstance in which an implied license arises is "when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quotation omitted). This is not, however, the only circumstance in which an implied license can arise. An implied license may arise in any "circumstances where the totality of the parties' conduct supported such an outcome." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012). "Consent for an implied license may take the form of permission or lack of objection." *Id.* at 500.

Plaintiffs argue that Defendants have no evidence to suggest an implied license: "Specifically, there is no evidence to show that it was Plaintiffs' intent to allow copying and distribution of the copyrighted works. Defendants tried and

failed repeatedly to procure an agreement between themselves and Plaintiffs."
Dkt. 46 at 21. Stated differently, Plaintiffs' position is that Defendants' multiple
attempts and failures to "procure the rights to Plaintiffs' copyright in the
works . . . evinces a mutual understanding that Defendants *did not have* the right
to use Plaintiffs' copyrighted works." *Id.* at 17.

In support of this argument, Plaintiffs cite *Oracle America, Inc. v. Hewlett
Packard Enterprise Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020). That Ninth Circuit
opinion, however, does not discuss implied licenses and Plaintiffs offer no
explanation for how it applies to the facts of this case. Plaintiffs likely intended to
cite *Oracle America, Inc. v. Terix Computer Co.*, No. 5:13-cv-03385, 2015 WL
2090191, at *8 (N.D. Cal. May 5, 2015), for the proposition that "no implied license
may permit what the actual licenses prohibit." *Id.* Plaintiffs presumably make this
argument because Article 5.2 of the Teaming Agreement states that:

> SUBCONSULTANT shall retain its ownership rights in its design,
> drawing details, specifications, data bases, computer software,
> intellectual property and other proprietary property. Any know-how,
> methodologies, equipment or processes used by Team Member under
> this Agreement or subsequent Prime Contract, including without
> limitation, all copyrights, trademarks, patents, trade secrets, and any
> other proprietary rights inherent therein and appurtenant thereto
> shall remain the sole and exclusive property of Team Member or its
> suppliers.

Dkt. 46-11 at 3. Yet, Plaintiffs fail to cite any case law that stands for the proposition
that a reservation of rights cannot still give rise to an implied license where, as
here, Defendants requested the creation of a work that Plaintiffs delivered
*knowing* that it would be distributed. *See* Dkt. 67 at 10–11.

"[A]lthough the contract expressly reserves ownership of Plaintiff's
copyright in the designs, this is not dispositive of the licensing issue." *Ranieri v.
Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 338 (N.D.N.Y. 2016); *see also
Thomas M. Gilbert Architects, P.C. v. Accent Builders & Devs., LLC*, 377 F. App'x
303, 308 (4th Cir. 2010) ("While an express reservation of ownership in the Plans'

copyright is not dispositive of the licensing issue, . . . at a minimum it evinces an intent to grant, at best, a limited license.").

> In short, although courts have held that contractual language can create or negate an implied license, . . . [the Teaming Agreement does not] definitively establish whether or not an implied license arose in this case. Moreover, even if strict application of the contract language would preclude implied licenses to use the [works], it is possible that there was a course of conduct between the parties that did create an implied license. For example, if the contracts all said that there could be no implied licenses, and that permission to use the images did not begin until full payment was made, but the parties' actual practice was always to bill for the licenses a month after publication, there would potentially be a strong argument that the defendant had an implied license notwithstanding the contract language.

*Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 127 (S.D.N.Y. 2012). Plaintiffs' statement in their own motion for summary judgment that "*any* license to use was conditional upon Plaintiffs' receipt of such due consideration" suggests this may be the case. Dkt. 46 at 12. In other words, Plaintiffs seem to implicitly acknowledge that they were granting Defendants a nonexclusive implied license in exchange for payment, which Plaintiffs never received. But that is a breach of contract claim, not a copyright infringement claim.

Construing the evidence in favor of the nonmovants, as I must, the "better course" is to proceed to trial on Plaintiffs' claims. *Anderson*, 477 U.S. at 255.[1]

## JUST TOUCH DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Just Touch Defendants move for partial summary judgment on Plaintiffs' actual damages and disgorgement of profits claims, arguing that "Plaintiffs have failed to meet their burden of presenting legally sufficient evidence" of either. Dkt. 55 at 31. Through their briefing, the parties have also raised the issue of

---

[1] HNTB has filed Objections to and [a] Motion to Strike Plaintiffs' Summary Judgment Evidence. Dkt. 66. I deny these objections as moot because "this evidence does not affect the disposition of [Plaintiffs'] summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-cv-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022).

whether "Plaintiffs have withdrawn their claims for statutory damages and attorneys' fees." *Id*. at 14.

### A.    PLAINTIFFS HAVE WITHDRAWN THEIR CLAIMS FOR STATUTORY DAMAGES AND ATTORNEYS' FEES

In response to HNTB's motion to dismiss, Plaintiffs unequivocally stated that they had "decided to forego the pursuit of statutory damages and attorney fees to expedite proceedings and opt for actual damages and lost profits." Dkt. 32 at 13–14. Plaintiffs then explained the practical reason for doing so:

> This decision is in line with established case law, which confirms a copyright holder's right to choose between these remedies. . . . Plaintiffs aim to simplify the legal process, ensuring a just resolution by presenting evidence of their actual damages and any profits linked to the infringement. This approach aligns with statutory guidelines and legal precedent, demonstrating Plaintiffs' commitment to a fair resolution *without seeking statutory damages or attorney fees*.

*Id*. at 14 (emphasis added). This concession is "absolutely binding" on Plaintiffs. *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir. 1959).

> An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client. Those statements or agreements which dispense with proof of facts are made with respect to the impending trial and until withdrawn are not merely evidence as in the case of an ordinary admission. They are absolutely binding. As long as they stand, they foreclose the matter altogether.

*Id*. It is true that Plaintiffs could have "withdrawn" this statement. *Id*. But they must have done so in a timely fashion. Plaintiffs cannot alter their damages theories after the close of discovery in response to a dispositive motion. Accordingly, Plaintiffs must be held to their word that they are not seeking statutory damages or attorneys' fees.

**B.    PLAINTIFFS HAVE NOT PRESENTED EVIDENCE OF DAMAGES[2]**

Just Touch Defendants seek partial summary judgment on Plaintiffs' claims for actual damages and disgorgement of profits. I will address each in turn.

**1.    *Actual Damages***

"In a copyright infringement case, actual damages may be determined by examining the fair market value of a license authorizing the defendant's use." *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) (collecting cases). "Courts have construed the 'actual damages' measure to include license fees that the copyright owner would have obtained for the infringer's use of the copyrighted material." *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4366990, at *11 (S.D. Tex. Oct. 27, 2010). "Fair market value may be established where: (1) a plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work." *Id.* (quotation omitted). Just Touch Defendants argue that Plaintiffs have presented no evidence of actual damages. I agree.

For starters, Plaintiffs fail to offer a shred of evidence indicating "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material." *MGE UPS Sys. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010). Plaintiffs' mere assertion that they "suffered actual damages" through Defendants' use of the copyrighted material is not evidence of fair market value. Dkt. 68 at 11.

Plaintiffs argue they "are entitled to a fair hourly rate" for the work they performed to prepare the videos HNTB allegedly used in its bid proposal to METRO. *Id.* Fine, but Plaintiffs must still put forth some evidence of what that

---

[2] Just Touch Defendants ask me to strike Plaintiffs' evidence of damages as untimely because it was either not produced or disclosed during discovery. *See* Dkt. 79 at 15. I need not reach this argument because, even considering the summary judgment record, Plaintiffs have not presented competent summary judgment evidence to create a genuine dispute on either of their damages claims.

hourly rate should be. They have not done so. Indeed, Plaintiffs acknowledge that they seek a fair hourly rate "which as yet has not been determined." *Id.* This admission is fatal to Plaintiffs' actual damages claim.

To survive summary judgment, it is Plaintiffs' burden to present some evidence creating a genuine dispute of material fact as to damages. The fact that "the MSA Agreement between HNTB and METRO . . . allowed an hourly rate, approved by METRO, with Metro's allotted profit of 12% after markup" sheds no light on the appropriate hourly rate Plaintiffs should receive for the work Web Apps did in connection with HNTB's bid submission. *Id.* Because Plaintiffs have presented no evidence of actual damages, Just Touch Defendants are entitled to summary judgment on Plaintiffs' actual damages claim.

### 2.    *Disgorgement of Profits*

A plaintiff asserting a copyright infringement claim may seek "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "The plaintiff has the burden of proving that the defendant's gross revenues are specifically attributable to the sale of the infringing works." *Straus*, 484 F. Supp. 2d at 645 (collecting cases). In the context of § 504(b), "'gross revenue' refers only to revenue *reasonably related* to the infringement." *MGE UPS*, 622 F.3d at 367 (quotation omitted). "Once the plaintiff has presented proof of the infringer's gross revenues attributable to the sale of the infringing works, the defendant is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Straus*, 484 F. Supp. 2d at 645.

Like in *Straus*, this case "is not a case in which the defendants are alleged to have sold the copyrighted work for a profit. Rather, this is an indirect profits case, in which defendants are alleged to have used a copyrighted [work] to sell other products." *Id.* In such a case, "the profits 'attributable' to the infringement are more difficult to quantify. But that difficulty does not change the burden of proof established by the statute." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796

(8th Cir. 2003). "[T]he plaintiff has the burden to demonstrate a nexus between the infringement and the indirect profits." *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (quotation omitted).

Plaintiffs claim that Just Touch Defendants performed almost $1 million in subcontracting work on the METRO contract awarded to HNTB. Plaintiffs further insist that they are entitled to the profits Just Touch Defendants received for that work. As my esteemed colleague, Senior Judge Lee Rosenthal, observed, "several" courts have "den[ied] recovery of the defendant's profits based on revenues from selling products that were advertised through the unauthorized use of copyrighted materials." *Straus*, 484 F. Supp. 2d at 646 (collecting cases). As in those cases, there is simply no competent evidence here of a causal relationship between Just Touch Defendants' alleged use of the copyrighted materials and the award of the METRO contract to HNTB (not to mention the profits Just Touch Defendants obtained for working on the METRO project).

Plaintiffs maintain that HNTB's use of Web Apps's copyrighted material "pushed HNTB to the lead in the evaluation of the submittals" for the METRO contract. Dkt. 68 at 14 (quoting Dkt. 70 at 4). The only evidence Plaintiffs can point to for this assertion is the declaration of Achilles Patrick, a declarant who "was not involved with the selection of HNTB," Dkt. 70 at 2, did not work at METRO when the proposal in question was submitted, and whose statements about HNTB's submission are based entirely on documents that are not in the record. *See* Dkt. 70. Patrick's declaration is not based on personal knowledge, lacks foundation, and consists of conclusions, speculation, and inadmissible hearsay. I do not consider it. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (holding "that the district court was permitted to find [evidence] to be hearsay despite the lack of discussion of hearsay prior to the district court's initial opinion"). Because Plaintiffs can point to no admissible evidence suggesting a causal relationship between the infringement and Just Touch Defendants' profits, Just Touch

Defendants are entitled to summary judgment on Plaintiffs' disgorgement of profits claim.

**C.    THE COURT SHOULD *SUA SPONTE* ENTER JUDGMENT IN FAVOR OF HNTB ON PLAINTIFFS' DAMAGES CLAIMS**

Although the deadline to file dispositive motions in this case expired on November 23, 2024, HNTB, without seeking leave of court, filed a Joinder and Reply in Further Support of [Just Touch Defendants' Motion for Partial] Summary Judgment on February 21, 2025—the same day that Just Touch Defendants' reply in support of their motion for partial summary judgment was due. Dkt. 76. Also on February 21, 2025, HNTB filed Objections to and [a] Motion to Strike Plaintiffs' Summary Judgment Evidence directed at the evidence Plaintiffs submitted in opposition to Just Touch Defendants' motion for partial summary judgment. Dkt. 78. Even if I overlook that HNTB filed its joinder and objections without leave of court, there remains the fact that HNTB did not attempt to join Just Touch Defendants' motion until the reply deadline, leaving Plaintiffs no opportunity to respond. For this reason, I cannot consider HNTB's joinder and objections.

Despite HNTB's dilatoriness, however, it would be a colossal waste of judicial resources and jurors' time to have a trial on claims that—for all the reasons discussed above—are doomed to fail.[4] As discussed above, Plaintiffs have withdrawn their claims for statutory damages and attorneys' fees. Plaintiffs have also failed to present any evidence creating a genuine issue of material fact that there is a clear, nonspeculative nexus between HNTB's alleged infringement and HNTB's alleged profits. Accordingly, I recommend the court *sua sponte* apply its rulings on Just Touch Defendants' motion for partial summary judgment to HNTB. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770–71 (5th Cir. 2000) ("[I]t is well-settled that a district court may grant summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." (quotation omitted)).

---

[4] "Plaintiffs do not seek actual damages from HNTB." Dkt. 98 at 16.

**HNTB'S MOTION TO EXCLUDE**

Once judgment is entered in Defendants' favor on Plaintiffs' damages claims, HNTB's motion to exclude should be denied in part as moot, at least to the extent HNTB seeks to exclude "evidence and argument regarding Plaintiffs' alleged damages." Dkt. 96-5 at 1. But HNTB also seeks to exclude "testimony from the following individuals, who were not properly disclosed in accordance with Rule 26(a): Achilles Patrick, Sir C. Black, Kimberly Slaughter, Bridget Mickins, Brian Diggs, Art Hadnett, Christy Haven, Argentina James, Vince Obregon, Charles Beauv[oir], and Raquel Olivier." Dkt. 96 at 12. That portion of HNTB's motion to exclude is not moot.

## A.   LEGAL STANDARD

Every party must, "without awaiting a discovery request, provide to the other parties:" (1) the identity and contact information of individuals "likely to have discoverable information"; (2) "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses"; and (3) "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(i)–(iii). Parties are under a continuing duty to "supplement or correct" their disclosures and responses. Fed. R. Civ. P. 26(e)(1). If a party fails to timely disclose or supplement, "'the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *King v. King*, 117 F.4th 301, 306 (5th Cir. 2024) (quoting Fed. R. Civ. P. 37(c)(1)). "District courts enjoy wide latitude" when determining whether to exclude evidence. *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 277 (5th Cir. 2009) (quotation omitted).

There are four factors the Fifth Circuit considers in determining "whether a district court abused its discretion" in ruling on a motion to exclude: "(1) the importance of the evidence; (2) any prejudice to the opposing party that would result if the evidence were admitted; (3) the availability of a continuance to cure

such prejudice; and (4) the party's explanation for its failure to comply with Rule 26 in the first instance." *King v. King*, 117 F.4th 301, 307 (5th Cir. 2024).

## B.    ANALYSIS

It is undisputed that Plaintiffs failed to serve Rule 26 disclosures until two months after the close of discovery. Nonetheless, I find that Plaintiffs' failure to timely disclose most of their witnesses is harmless for the reasons discussed below.

**Sir C. Black** and **Brian Diggs**: HNTB disclosed Black and Diggs as potential witnesses. It follows that HNTB is not prejudiced by the untimely disclosure of witnesses that it disclosed. *See In re Sambrano*, 440 B.R. 702, 708 (Bankr. W.D. Tex. 2010) (collecting cases and holding that the defendant "would not be prejudiced" by allowing the testimony of an untimely disclosed witness that the defendant itself disclosed).

**Achilles Patrick**: Nor is HNTB prejudiced by the untimely disclosure of Patrick, whose declaration Plaintiffs submitted in support of their motion for partial summary judgment, filed more than three months before the close of discovery. *See* Dkt. 46 at 7.[5]

**Kimberly Slaughter**: HNTB is likewise not prejudiced by the untimely disclosure of third-party and former HNTB employee, whose emails sent directly to Brown about incorporating the videos into HNTB's proposal were included in Plaintiffs' motion for partial summary judgment. *See* Dkt. 46-7.

**Art Hadnett, Christy Haven, Argentina James, Vince Obregon, Charles Beauvoir, and Raquel Olivier**: These individuals are all current HNTB employees, many of whom Plaintiffs filmed in creating the copyrighted works at issue. Given that these individuals are, obviously, well known to HNTB, I find Plaintiffs' failure to timely identify them as witnesses harmless.

**Bridget Mickins**: Mickins is a JTI executive. There is nothing in the record to suggest that HNTB should have expected Mickins to be called as witnesses in

---

[5] As discussed above, Patrick is incompetent to testify as to HNTB's selection for the METRO contract.

this litigation. HNTB did not list Mickins as a potential witness and neither did Just Touch Defendants. Plaintiffs offer no reason why Mickins's testimony is important. Thus, the first factor weighs in favor of exclusion. In discussing prejudice to HNTB—the second factor—Plaintiffs fail to offer any justification for why HNTB would not be prejudiced by the testimony of Mickins. *See* Dkt. 98 at 18–19. By not timely identifying Mickins as a witness, Plaintiffs prevented HNTB from depositing her. That is prejudicial. Accordingly, the second factor also weighs in favor of exclusion. As to the third factor, "Plaintiffs are willing to make any witness under their control available for deposition between now and the date of docket call." *Id.* at 20. But Mickins is not under Plaintiffs' control. The third factor also weighs in favor of exclusion. Finally, as to the fourth and most important factor: "Plaintiffs do not offer a justification for their failure to timely serve Rule 26(a)(1) initial disclosures." *Id.* at 20. This weighs heavily in favor of exclusion.

Because every factor weighs in favor of excluding the testimony of Mickins, she will not be allowed to testify at trial.

### HNTB'S MOTION TO STRIKE PLAINTIFFS' JURY DEMAND

Because all that will remain are Plaintiffs' claims for equitable relief against Defendants, Plaintiffs are not entitled to a jury trial. "[A] claim for injunctive relief is deemed an equitable remedy not implicating the right to a trial by jury." *United States v. Stewart*, No. A-02-CA-673, 2003 WL 932362, at *1 (W.D. Tex. Jan. 31, 2003) (citing *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974)). Thus, HNTB's motion to strike Plaintiffs' jury demand should be granted.

### CONCLUSION

For the reasons explained above, the court should deny Plaintiffs' motion for partial summary judgment (Dkt. 46); grant Just Touch Defendants' motion for partial summary judgment (Dkt. 55); apply *sua sponte* its rulings on Just Touch Defendants' motion for partial summary judgment to HNTB; deny HNTB's motion to exclude (Dkt. 96) in part but grant the motion as to the exclusion of Bridget Mickins as a witness; and grant HNTB's motion to strike Plaintiffs' jury demand

(Dkt. 97). This case should be set for a bench trial on Plaintiffs' claims for equitable relief against Defendants.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 2nd day of September 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE